**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| PERLBERGER LAW ASSOCIATES, P.C., | : | |
| HANNA PERLBERGER | : | |
| Plaintiffs, | : | **CIVIL ACTION** |
| | : | **No. 21-2287** |
| v. | : | |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| Defendant. | : | |

---

**McHUGH, J.**                                                                              **August 3, 2021**

## MEMORANDUM

This case arises out of an unusual check fraud scheme. Plaintiff Perlberger Law Associates, P.C. accepted an assignment to collect a debt owed by a Philadelphia machinery business on behalf of a new client, ostensibly a tool company in Florida. Plaintiff demanded payment of the outstanding bill, and a check for the full amount was quickly tendered. The check appeared on its face to have been issued by the Philadelphia business Plaintiff had been hired to pursue. The law firm deposited the check with its bank, Defendant Wells Fargo, and upon notice that the funds were available, authorized distribution to its purported client. Unbeknownst to Plaintiff, its "client's" instructions were to wire the money—almost $200,000—not to Florida, but to a Nigerian bank. In fact, the check was forged. When the forgery was discovered, Wells Fargo debited Plaintiff in the amount of the wire.

This lawsuit against Wells Fargo followed. Plaintiff contends that the bank's conduct violated multiple provisions of the Pennsylvania Commercial Code and breached an implied contract created by its own policies and safeguards to detect fraud. Wells Fargo moves to dismiss, and I agree with the bank that the facts of this case do not fall within any of the cited provisions of

the Code.  But I also concur with Plaintiff that not all common law remedies are displaced by the Code and that discovery is necessary to determine whether Wells Fargo can deny responsibility for the loss.  The motion will therefore be granted in part.

## I.   Factual Allegations and Procedural Posture

On June 8, 2020, an individual purporting to be Julio Gomez, President of Tools & Equipment Supply, retained Plaintiff Perlberger Law Associates, P.C. ("PLA") to collect a $199,550 debt from Derbyshire Machine & Tool Co.  *See* Compl. ¶ 6, ECF 1.  After reaching out to an individual allegedly representing Derbyshire to collect the debt, PLA received a signed check in the amount of the debt owed.  *Id.* ¶ 9.  On June 17, 2020, Hanna Perlberger of PLA visited a Bala Cynwyd branch of Wells Fargo ("Defendant"), with the intention of depositing the check into PLA's Interest on Lawyers' Trust Account.  *Id.* ¶¶ 10, 13.  She was not permitted to enter the branch office on account of COVID-19.  *Id.* ¶ 13.  A Wells Fargo bank officer instead directed Perlberger to use her debit card and deposit the $199,500 check into an ATM machine.  *Id.*  The debit card could only accept deposits into PLA's operating account.  *Id.*  Because the check was deposited through an ATM machine, it was not examined by the teller; it was placed on a truck and taken to another Wells Fargo facility for processing.  *Id.* ¶ 14.

Perlberger subsequently learned through online banking that the funds had "cleared," and she set up an appointment to wire the funds to Gomez, as he had instructed.  *Id.* ¶¶ 16, 17.  Gomez's corporate address was listed as 5625 NW 79th St. Doral, FL 3316, but the wiring instructions, unbeknownst to Plaintiff, directed the funds to Guaranty Bank in Nigeria.  *Id.* ¶¶ 6, 18.  After examining the wire codes, a Wells Fargo bank officer approved the transaction and wired the funds to Nigeria on June 18, 2020.  *Id.* ¶ 17.  Plaintiff alleges that the transmission of funds to Nigeria was part of an illegal money laundering scheme.  *Id.* ¶ 29.

On June 22, Wells Fargo mailed Plaintiff a letter indicating that it was "delaying the availability of the funds" because the signature on the Derbyshire check was forged. *Id.* ¶ 21. The bank then charged PLA's operating account in the amount of $199,500, which resulted in an overdraft, as the prior balance of the operating account had been $160,254.34. *Id.* ¶¶ 22, 19. The sole funds within the operating account were loans that PLA had received from the Small Business Administration ("SBA"). *Id.* ¶ 24. Wells Fargo also served as the SBA-designed lender of these funds. *Id.* ¶ 25.

Having unsuccessfully sought reimbursement from Wells Fargo, Plaintiff has sued, alleging violations of fiduciary duty and the Pennsylvania Commercial Code, as well as conversion, unjust enrichment, and breach of contract.[1]

## II.   Standard of Review

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.   Discussion

### A.  Count I: Fiduciary Duty

First, PLA argues that, "[i]n acting as a lender and agent of SBA funds borrowed by Plaintiff PLA, Wells Fargo had a fiduciary duty to monitor, protect and guard against an unlawful

---

[1] Previously, PLA sued in the Southern District of Florida, which determined that it lacked personal jurisdiction over Wells Fargo. *See* Order, *Hanna Perlberger, et al. v. Wells Fargo Bank, N.A., et al.*, No. 1:21-cv-20510 (S.D. Fla. May 5, 2021). The court went on to address the merits in dicta, ultimately dismissing the amended complaint without prejudice. *Id.* Such a dismissal does not have any preclusive effect and I will consider Plaintiff's claims in full. *See, e.g., Bamgbose v. Delta T-Group,* 724 F. Supp. 2d 510, 519 (E.D. Pa. 2010).

dissipation by a third party."  Compl. ¶ 35.[2]  Plaintiff's theory is novel and devoid of citation to any authority for the proposition that Wells Fargo's participation in SBA's COVID-19 relief programs gives rise to fiduciary obligations.

Considering what precedent there is as to the existence of a fiduciary relationship between banks and borrowers, I see no basis on which to predict that Pennsylvania would recognize fiduciary duties in this context.  Pennsylvania courts have held that the debtor-creditor relationship ordinarily does not confer a fiduciary relationship.  *See Buzcek v. First Nat. Bank of Mifflintown*, 531 A.2d 1122, 1124 (Pa. Super. Ct. 1987).   In limited circumstances, federal courts have suggested that it is possible for such a relationship to arise under Pennsylvania law.  For example, a fiduciary relationship may arise "if the lender gains substantial control over the borrower's business affairs."  *Temp-Way Corp. v. Continental Bank*, 139 B.R. 299, 318 (E.D. Pa. 1992) (stating that "[t]he mere monitoring of the borrower's operations and the proffering of management advice by lenders, without more, does not constitute control.").  *See also Bohm v. Commerce Union Bank of Tenn.*, 794 F. Supp. 158, 164 (W.D. Pa. 1992) (rejecting plaintiff's theory that "a fiduciary relationship existed because all of IMPS's cash flow was channeled through Commerce, and IMPS placed trust in Commerce to manage and administer the funds").  Plaintiff does not plead that Defendant's participation in the COVID relief effort resulted in Walls Fargo becoming involved in its day-to-day operations or otherwise controlling PLA's affairs.  I will therefore dismiss Plaintiff's fiduciary claim.

---

[2] PLA also pleads that "[a]s the bank accepting the deposit of the disputed check, Wells Fargo had a fiduciary duty to detect the fraudulent nature of the check, unknown and unappreciated by Plaintiffs, before clearing the check for further transactions."  Compl. ¶ 36.  In responding to this motion, PLA has effectively withdrawn this claim, having conceded that "[t]he normal relationship of a bank to its customer/depositor is that of principal and agent.  In that regard, Plaintiffs do not contend that the conduct of Wells Fargo, in that limited capacity, creates a fiduciary duty to Plaintiffs."  Pl.'s Resp. Opp'n 7, ECF 6.  Given this concession, I will also dismiss any fiduciary claim ostensibly created by the principal-agent relationship.

B. <u>Count II:  Claims under the Pennsylvania Commercial Code</u>

Plaintiff also contends that Defendant's conduct violated §§ 3404, 3416, 4207, 4208, 4209, 4401, and 4A202 of the Pennsylvania Commercial Code ("PCC").[3]  The general purpose of the PCC is to create clear rules to facilitate the conduct of business.  *See* 13 Pa.C.S.A. § 1103(a).  Certain provisions address fraud, but the PCC was not designed to address the type of well-orchestrated scam that victimized Plaintiff here.  PLA attempts to fit the facts of this case into various provisions of the PCC but in each instance fails to meet the requirements of the Code provision it invokes.  I must therefore grant Defendant's motion to dismiss Count II of Plaintiff's complaint.

*1.  § 3404*

PLA contends that Defendant failed to exercise ordinary care, in violation of § 3404, a provision that allocates losses incurred on account of imposters, § 3404(a) and fictitious payees, § 3404(b).  *See* 13 Pa.C.S.A. § 3404.  Section 3404(b)[4] applies when "a person whose intent determines to whom an instrument is payable … does not intend the person identified as payee to have ***any*** interest in the instrument."  *Id.* (emphasis added).  In PLA's view, this section is relevant because the signer of the fraudulent Derbyshire check did not ultimately intend for PLA to hold an interest in the instrument.  *See* Pl.'s Resp. Opp'n 19.

This argument does not fit within the terms of the statute.  Section 3404(b) sets forth procedures for when an incorrect person is identified as a payee and specifically incorporates §

---

[3] Plaintiff broadly invokes the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq*., as well as PCC § 3103, which defines the PCC standard of "ordinary care." Compl. ¶¶ 59, 66.  Because PLA does not plead which provisions confer a cause of action, I will grant Defendant's motion to dismiss with respect to these claims.  *See also Binns v. BB&T Bank*, 377 F.Supp. 3d 487, 493 (E.D. Pa. 2019) (McHugh, J.) , *aff'd* 803 Fed. Appx. 618 (3d. Cir 2020) (observing that the EFTA solely protects consumer accounts "established primarily for personal, family, or household purposes").

[4] PLA does not claim that § 3404(a) applies.

3110(a), which contains similar rules.  More particularly, § 3404(b)(1) provides that "[a]ny person in possession of the instrument is its holder" and § 3110(a) separately states that "[t]he instrument is payable to the person intended by the signer even if that person is identified in the instrument by a name or other identification that is not that of the intended person."  13 Pa.C.S.A. §§ 3404(b); 3110(a).  When read together, these sections address a different type of fraud.  Here, the signer of the forged check certainly intended for PLA to have at least a temporary interest—long enough to deposit the instrument and transfer funds.  PLA's claim therefore falls outside of § 3404, as PLA does not dispute that it was Derbyshire's intended payee.

## 2.  §§ 3416 and 4207

Sections 3416 and 4207 address warranties made by transferors to transferees.   13 Pa.C.S.A. §§ 3416(a); 4207(a).  PLA does not assert that Defendant transferred an instrument to them; rather, they claim that they are a third-party beneficiary of the warranties that Wells Fargo made to Citibank (the intermediary recipient of the transferred funds).  Plaintiff specifically avers that:

> Wells Fargo then created an electronic substitute check and transmitted it to Citibank for collection, the successive transferee. Wells Fargo was acting as PLA's agent, and thus was warranting to Citibank, on behalf of PLA, that "all signatures on the item are authentic and authorized"; "the item has not been altered [by addition of numbers]; and "the item is not subject to a defense."

Pl.'s Resp. Opp'n 19–20.

Once again, Plaintiff cites no legal authority for its position.  To adopt Plaintiff's theory, the warranty Wells Fargo owed to Citibank upon transfer of the check would flow back to PLA.  But, recognizing that Wells Fargo was, at the time, acting as an agent for PLA, in practical terms, this Court is being asked to rewrite the statute to extend transferee warranties back to the principal of a transferor.  Again, PLA is attempting to fit the unusual facts of this case into a statutory

provision dealing with an entirely different class of transactions.  There is no reasonable basis on which to do so.

3.  *§ 4208*

Section 4208 generally operates to protect individuals who pay or accept instruments (termed "drawees").  *See* 13 Pa.C.S.A. § 4104.  It creates a warranty on the part of the party presenting the check that, so far as the presenting party knows, the draft was validly authorized. Here, PLA presented the check to Wells Fargo, not the other way around, rendering § 4208 inapplicable.

4.  *§ 4209*

Pursuant to this provision, individuals or entities that encode information on or with respect to an item warrant to subsequent collecting banks and payors that the encoded information is correct. 13 Pa.C.S.A. § 4209(a).  Plaintiff has not pleaded that Wells Fargo encoded information on the instrument, providing no factual basis for this warranty to apply, even assuming that PLA falls into the class of persons protected by the statute.

5.  *§ 4401*

Section 4401, which governs overdraft charges,[5] also does not apply on the facts of this case. The provision provides that:

> A bank may charge against the account of a customer an item that is *properly payable from that account* even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and the bank.

13 Pa.C.S.A. § 4401(a) (emphasis added).

---

[5] Plaintiff also contends that UCC § 4-401(1) applies.  Because the provisions are identical, I analyze them in tandem.

The statute creates a "limitation on customer liability" when "the customer neither signed the item nor benefited from the proceeds of the item." *Id.* § 4401(b). This protection generally accrues to customers who are charged after their signature is forged on an instrument. *See Guardian Life Ins. Co. of Am. v. Weisman,* 223 F.3d 229, 232 (3d Cir. 2000) (stating, in the context of UCC § 4-401(1), that a forged check is not properly payable and that a bank must credit the account of the person who wrongly paid). PLA contends that it qualifies for protection because it did not benefit from the forged Derbyshire check. Once again, however, the situation presented here is not addressed by the Code. The forged instrument in question was *payable from Derbyshire's account*, not PLA's. PLA's overdraft arose from its wire transfer, a transaction it authorized Wells Fargo to execute. The overdraft stemmed from the underlying forgery, but the bank nonetheless acted pursuant to PLA's instructions. This provision, therefore, cannot be read to confer rights upon PLA.

6. *§ 4A202*

This section creates protections against unauthorized wire transfers and states that "[a] payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency." 13 Pa.C.S.A. § 4A202. Although PLA claims that Defendant should be held liable for failing to detect the fraudulent nature of the transaction, it does not dispute that it authorized the wire transfer at Defendant's branch. For this reason, § 4A202 cannot apply. Defendant's motion to dismiss Count II of Plaintiff's complaint is granted.

C. Count III: Common Law Remedies

1. Displacement by the PCC

The PCC does not displace all common law remedies.  Such remedies, whether in contract or in tort survive and "supplement" the provisions of the Code "[u]nless displaced by the particular provisions of this title."  13 Pa.C.S.A. § 1103(b).  According to the Third Circuit, common law remedies remain available unless a provision of the Code offers a "comprehensive remedy for parties to a transaction" and reliance on "the common law would thwart the purposes of the Code." *New Jersey Bank N.A. v. Bradford Sec. Operations, Inc.*, 690 F.2d 339, 346–47 (3d Cir. 1982). The test is whether a Code provision "would be rendered meaningless by allowance of common-law claim[s]".  *Id.* at 346 (citation omitted).

PLA's complaint includes common law claims for unjust enrichment, conversion, and breach of contract.  Plaintiff concedes that its claims for conversion and unjust enrichment are displaced by the PCC, and I will therefore grant Defendant's motion as to these claims.[6]  That leaves Plaintiff's contract claims, which I will permit Plaintiff to pursue at this early stage.

PLA alleges that Defendant assumed contractual duties that included employing fraud detection measures and verifying codes and wiring instructions and that Defendant failed to perform these contractual obligations.  *See* Compl. ¶ 80.  Defendant argues, in turn, that permitting an action for breach of contract would undermine PCC § 4201(a), which provides that settlements given for items (namely the funds that are available following the deposit of an instrument) are "provisional … unless a contrary intent clearly appears."  *See* Def.'s Reply at 8, ECF 8 (quoting

---

[6] The PCC explicitly protects against conversion where an instrument "is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument."  13 Pa.C.S.A. § 3420(a) (titled "Conversion of Instrument").  PLA alleged that Defendant should be held liable for seizing funds that were made available to Plaintiff following the deposit of the fraudulent instrument.  Because permitting a cause of action for conversion or unjust enrichment in this instance would render § 3420(a) redundant, such claims are displaced.

13 Pa.C.S.A. § 4201(a)).  The record before me at this early stage is limited.  It is unclear what Wells Fargo represented to PLA about the status of the forged check before funds were transferred.  Although § 4201 may apply, it is also unclear whether the PCC would redress the totality of Plaintiff's breach of contract claim, which also includes allegations that Wells Fargo failed to employ its fraud detection practices and permitted Plaintiff to wire funds to a Nigerian bank.  Preemption is a fact-intensive inquiry, and at this juncture I cannot conclude Plaintiff's admittedly unusual breach of contract claim is fully redressable by the PCC.  *See Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 781 n.7 (E.D. Pa. 2008).  *See also Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995).  I therefore decline to hold that Plaintiff's breach of contract claim is displaced by the PCC and will not dismiss the claim on this basis.  *See Bucci*, 591 F. Supp. at 780–781.

2.  Merits of Contract Claim

Defendant also argues that Plaintiff's claim should be dismissed because PLA has not sufficiently alleged the existence of a contract.  *See* Def.'s Reply 4.  Plaintiff's breach of contract claim does not arise from an explicit agreement between the parties.  But bank accounts may be the subject of an express or implied contract under Pennsylvania law.  *See Cohen v. Marian*, 90 A.2d 373, 375 (Pa. Super. Ct. 1952).  In Pennsylvania, a claim for breach of contract requires "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages."  *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).  "The essential elements of breach of implied contract are the same as an express contract, except the contract is implied through the parties' conduct, rather than expressly written."  *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 675 (E.D. Pa. 2015).  Plaintiff's complaint alleges that Wells Fargo incurred, and breached, myriad contractual duties including "verifying all

codes and wiring instructions," "matching the prospective recipient of wired funds to FATF lists of suspicious institutions," and "[e]mploying security and fraud detection measures that it advertised."  Compl. ¶ 80.  Discovery will be necessary to ascertain whether these contractual terms may be implied through the parties' conduct.

IV.   **<u>Conclusion</u>**

For the reasons set forth above, Defendant's Motion to Dismiss will be granted in part and denied in part.  An appropriate order follows.

<u>    /s/ Gerald Austin McHugh</u>
United States District Judge